AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Terrance Lee Hester Jr. | ) | Case No. |
| | ) | 8:20MJ1660AAS |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __May 31, 2020__ in the county of __Hillsborough__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 844(i) | Damaging or destroying by fire a building used in interstate commerce |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_William Grimmer_
*Complainant's signature*

Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence. via videoconference pursuant to FedRCrimP. 4.1 and 4(d).

Date: July 8, 2020

_Amanda A. Sansone_
*Judge's signature*

City and state: Tampa, Florida

Amanda Arnold Sansone
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

1. I, Special Agent William Grimmer, of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), swear as follows:

2. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

3. I have been a Special Agent with ATF for over three years. I have approximately eleven years of federal law enforcement training and experience consisting of, but not limited to, the earning of a Bachelor of Science Degree in the field of Engineering from Ohio University; the successful completion of the Uniformed Police Training Program and subsequent employment as a Uniformed Division Officer with the United States Secret Service; the successful completion of the Criminal Investigator Training Program and subsequent employment as a Special Agent with the United States Department of Energy; prior to becoming a Special Agent with the ATF. I successfully completed the ATF Special Agent Basic Training (SABT). While employed in these positions, I received additional training in subject matters specific to each position's requirements in furtherance of law enforcement duties. In connection with my official duties, I investigate a

variety of criminal violations related to arson, explosives, and the illegal possession/use of firearms.

4. I submit this affidavit in support of a criminal complaint against Terrance Lee HESTER Jr. As set forth herein, I have probable cause to believe that HESTER Jr. has committed a violation of 18 U.S.C. § 844(i) (damaging or destroying by fire a building used in interstate commerce).

5. The facts in this affidavit come from information obtained during the course of a criminal investigation. The statements contained in this affidavit are based on my own investigation of this matter, my training and experience, and information learned and relayed to me by other law enforcement officers. Because this affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint, it does not include all information I have learned during this investigation.

## PROBABLE CAUSE

6. On or about May 31, 2020, at approximately 12:53 a.m., Tampa Fire Rescue (TFR) received reports of a structure fire at the Champs sports store ("the Champs store"), located at 2381 East Fowler Avenue, Tampa, within the Middle District of Florida. The Champs store is in a building that is a multi-unit shopping plaza. Upon arrival, TFR units found unit number 2381 of the shopping center—the Champs store—fully engulfed in fire.

7. Earlier on or about May 30, 2020, a peaceful organized protest devolved into widespread civil unrest in the area around the location of the Champs store. The fire occurred during a period of looting and destruction to property in the area of the Champs store and nearby businesses.

8. Due to civil unrest in the vicinity, the Tampa Police Department (TPD) Fire Investigation Unit (FIU) was contacted by Tampa fire communications division after the scene was determined to be safe to begin its investigation.

9. During the course of the fire investigation, FIU interviewed TFR and TPD personnel on scene and discussed the facts and circumstances of the fire. TPD personnel stated that dozens of people illegally entered multiple stores in the shopping center, including the Champs store. The stores were intentionally damaged and burglarized. The Champs store and adjacent trees had been set on fire. TFR personnel reported that the fire at the Champs store spread rapidly and engulfed the roof.

10. Investigators reviewed various video recordings of events leading to the fire that engulfed the Champs store. These recordings were obtained from surveillance cameras and online social media platforms. In addition to showing the looting and destruction of property, a video showed an individual throwing a flaming object—white cloth material—into the Champs store

through a broken window on the side of the building. TPD Fire Investigator David Kopelman has completed an origin and cause investigation and provided a fire investigation report. According to Kopelman's findings, the fire originated at the unit labeled 2381 E. Fowler Avenue—the Champs store—which is the end unit on the northeast side of the building. The building as a whole is addressed as 2301 E. Fowler Avenue, Tampa, Florida.

11. Fire Investigator Kopelman determined the most heavily damaged unit of the shopping plaza was the Champs store. While watching live television news coverage of the fire, Kopelman observed the fire appeared to originate at the Champs store. This observation was confirmed after reviewing TPD helicopter video footage. The adjacent units also suffered damage from exposure to the fire originating at the Champs store.

12. In addition to the structure, Fire Investigator Kopelman observed burned palm trees on the east side of the building. The trees were ignited by rioters in the area, but after investigating the scene and reviewing video footage, Kopelman concluded the tree fires ignited separately and did not spread from the trees to the building without human intervention.

13. Investigator Kopelman concluded that the fire originated on the interior of the building, and was intentionally ignited most likely in multiple areas of the interior. Videos showed individuals who caused or contributed to

the cause of the fire, including individuals carrying flaming pawn fronds in the direction of the store and an individual tossing a flaming piece of cloth into the store through a broken window. Kopelman determined from all the factors observed at the scene and from the latent investigation that the fire was incendiary and an act of arson.

14. Fire Investigator Kopelman also concluded that the intentional act of throwing a flaming piece of cloth into a broken window of the Champs store caused or contributed to the cause of the fire.

15. ATF Certified Fire Investigator (CFI) Carl Anuszczyk reviewed the findings of the FIU report and concurs with the findings documented by Fire Investigator Kopelman.

16. The fire originating at the Champs store caused major damage to the building. The current estimated value of loss is approximately $1,250,000.00.

17. Bill Armstrong, the district manager for Footlocker, which oversees Champs sports stores, confirmed that the Champs store sells a variety of products obtained and manufactured outside of the state of Florida. Therefore, the building containing the Champs store was used in interstate or foreign commerce or in an activity affecting interstate or foreign commerce.

18. Based on my training and experience, the circumstances leading to the fire, the looting and destruction of property at the Champs store, and the findings of fire investigators, there is probable cause to believe the individuals who caused and contributed to the cause of the fire, including the individual who tossed a flaming piece of cloth into the Champs store through a broken window, acted maliciously.

19. From the video footage, investigators determined the individual who threw a flaming piece of cloth into the Champs store through a broken window is a black male with longer dreadlock-style hair, slim build, wearing blue jeans and no shirt. Subsequent investigation has identified that individual as HESTER Jr.

20. TPD also identified HESTER Jr. from surveillance video at another location. That video showed HESTER Jr. was present while looting occurred in or around Charlie's Market, located at 2815 E Sligh Ave., Tampa, Florida. Charlie's Market is located approximately four miles from the Champs sports store. HESTER Jr. is seen on video at Charlie's Market approximately one hour after the suspect tossed a flaming object into the Champs store.

21. One of the associated individuals observed with HESTER Jr. on video at Charlie's Market was a black male wearing a sleeveless jersey with

"Bloomingdale" on the front and a name and number on the back. This individual had a tattoo on his shoulder. Subsequent investigation and records revealed this individual (Relative 1) is a close relative of HESTER Jr.

22. The investigation revealed that the "Bloomingdale" on the front of the jersey worn by Relative 1 is an insignia for Bloomingdale High School. Investigators learned that another relative (Relative 2) of HESTER Jr. and Relative 1 played volleyball at Bloomingdale High School. The name on the back of the jersey worn by Relative 1 matched the name of Relative 2, and the number is the same number worn by Relative 2 as a volleyball player.

23. TPD identified a vehicle associated with HESTER Jr. and other associated individuals that was observed in the vicinity of both the Champs sports store and Charlie's Market. Records show the vehicle, a 2006 grey Chevrolet Impala, is registered to Relative 1.

24. Investigators made contact with Relative 1 and confirmed the similarity of his physical attributes with the individual seen on video with HESTER Jr. at Charlie's Market. In addition, investigators observed Relative 1 has an identifiable tattoo on his shoulder that matches the tattoo on the shoulder of the man wearing the "Bloomingdale" jersey on the Charlie's Market video.

25. During the first week of July 2020, TPD and ATF made contact with various friends and family members associated with HESTER Jr. and Relative 1. Upon presenting these individuals with still photographs obtained from the various video recordings, these individuals identified HESTER Jr. and Relative 1.

26. Furthermore, I have compared still video images of the suspect who tossed a flaming piece of cloth into the Champs store (Attachment A) with recent booking photographs of HESTER Jr. (Attachment B) and determined HESTER Jr.'s age, race, hair and facial features match the suspect.

27. Base on my training, experience, this investigation and consultation with TPD, there is probable cause to believe that Terrance HESTER Jr. is the individual observed throwing a flaming cloth into the Champs store prior to the business being fully engulfed in flames on or about May 31, 2020. By maliciously damaging or destroying a building being used in interstate commerce by means of fire, or attempting to do so, HESTER Jr. violated 18 U.S.C. § 844(i).

Accordingly, I respectfully request the issuance of a criminal complaint authorizing Terrance Lee HESTER Jr.'s arrest.

Respectfully submitted,

William Grimmer, Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Subscribed and sworn to before me via videoconference pursuant to
on this 8th day of July, 2020.                     Fed R Crim P 4.1 and 41(d)

AMANDA ARNOLD SANSONE
United States Magistrate Judge

9

## ATTACHMENT A

### Video images of individual identified as Terrance Lee Hester Jr.





## ATTACHMENT B

### Pinellas Booking photographs of Terrance Lee Hester Jr.

(Booking date: 5/4/2020)

